In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2227

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEANGELO TERRELL BANKS,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:20-cr-20034 — **Michael M. Mihm**, *Judge*.

———————————

ARGUED SEPTEMBER 18, 2025 — DECIDED JUNE 30, 2026

———————————

Before RIPPLE, LEE, and PRYOR, *Circuit Judges*.

LEE, *Circuit Judge*. Deangelo Banks was driving one night
when, according to a police officer, he failed to signal 100 feet
before making a left turn. After Banks parked his car in a
nearby strip mall lot, police officers began a traffic stop by ask-
ing him to provide his license and proof of insurance. But his
insurance papers had expired, so Banks got out of his car to
call someone to obtain his updated insurance information.
Some minutes later, while Banks was still on the phone and at

the same time conversing with an officer, another officer arrived with a drug-sniffing dog. The dog alerted to narcotics while outside of Banks's car. Police then searched the car's interior and found a handgun behind the center console but no drugs.

Banks was arrested and charged with knowingly possessing a firearm while a felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). He moved to suppress the handgun, but the district court denied the motion. Later at trial, he sought, and the court denied, a directed verdict on the grounds that the government had failed to present sufficient evidence for the jury to convict him of violating § 922(g)(1) and § 924(a)(2). Banks also requested a new trial, which too was denied. Banks now appeals, arguing that the district court improperly denied the motion to suppress and the motion for a new trial. Finding no error, we affirm.

# I

## Background

Banks was driving down the 1110th block of East Clay Street in Decatur, Illinois, on the night of May 27, 2020. The block was the length of two typical city blocks stretching approximately one-tenth of a mile (or 176 yards). While patrolling the area in an unmarked car, Sergeant Scott Rosenbery found himself trailing some distance behind Banks along that block and, at approximately 9:46 p.m., saw Banks turn left without signaling his intention to do so at least 100 feet before the turn as Illinois law requires. 625 Ill. Comp. Stat. 5/11-804(b). At that late hour, the street was dark, and Rosenbery was not certain how far behind he was trailing Banks.

After turning, Banks parked in a lot between a laundromat and gas station next to another car. Rosenbery followed and, because he was in an unmarked car, called for assistance from officers in a marked car.

Responding to the call, Officers Brent Morey and Phillip Ganley arrived and began a traffic stop by asking Banks for his license and insurance. Morey noticed that Banks's insurance card had expired and asked him to provide updated insurance information. Banks voluntarily got out of his car to make a call to get his new insurance information. While Banks was on the phone, Ganley asked him whether anyone else drove the car. Banks replied he was the only driver and that everything inside the car belonged to him.

At 9:50 p.m., four minutes after the stop began, Officer Austin Clark and Detective Chad Larner arrived with a drug-sniffing dog. The dog sniffed around the outside of Banks's car and alerted to narcotics. Police then searched the car and found a semi-automatic pistol hidden behind a panel under the car's center console; they did not find any drugs.

Based on the discovery of the gun, the officers arrested Banks and took him to the police station. There, Morey interviewed Banks who said he had no knowledge of the gun and had loaned the car to someone earlier that day. And, when officers investigated the title of the car, they found that it was registered to two owners, Banks and another man.

Later, during calls to his mother and another person from the jail, Banks shared that he thought someone had tipped off the police to stop him that night. A forensic examiner subsequently identified the DNA of four individuals on the gun, but none that belonged to Banks.

## II

## Discussion

On appeal, Banks argues that the district court erred in admitting the gun as evidence at trial because the officers lacked reasonable suspicion for the traffic stop, unreasonably prolonged the stop, and used an ill-trained drug-sniffing dog. In addition, he contends that the trial evidence was insufficient to establish that he "knowingly possessed" the handgun as § 922(g)(1) and § 924(a)(2) require.[1]

### A. Suppression Request

We first address Banks's appeal of the district court's denial of his request to suppress the handgun. When considering the denial of a suppression motion, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *See United States v. Eymann*, 962 F.3d 273, 281 (7th Cir. 2020) (citations omitted).

#### 1. Reasonable Suspicion

Banks contends that the police officers lacked reasonable suspicion to conduct a traffic stop. A traffic violation may serve as the basis for a stop by police. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (*en banc*). Such a stop must be based on an officer's reasonable suspicion that a traffic

---

[1] Section 922(g)(1) states, "It shall be unlawful for any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess in or affecting commerce, any firearm[.]" 18 U.S.C. § 922(g)(1). The version of § 924(a)(2) that existed at the time stated, "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2) (effective Dec. 21, 2018).

violation occurred—otherwise, it is unconstitutional. *Id.*; *see United States v. Avila*, 106 F.4th 684, 695 (7th Cir. 2024).

According to Banks, Rosenbery was not close enough to see the alleged turn-signal violation and otherwise lacked objective support to establish a reasonable suspicion that it occurred. Rosenbery's testimony during the suppression hearing did not clarify matters. He testified that he was trailing Banks's car somewhere along the double-length block but could not give an exact or approximate distance. Moreover, Rosenbery estimated that the block in question was as long as a football field when, in fact, it was nearly twice that length. And he could not recount how many times the left-turn signal of Banks's car had blinked before he made the turn. This led the district court to acknowledge that Rosenbery's testimony was weak. But rather than holding this against the officer, the district court construed Rosenbery's concessions of uncertainty as an indication of truthfulness and found his testimony generally credible. Banks says this conclusion was error.

Before us then is the straightforward question of whether the district court clearly erred in finding Rosenbery testified credibly. "A credibility determination will be overturned only if credited testimony is internally inconsistent, implausible, or contradicted by extrinsic evidence." *Avila*, 106 F.4th at 694 (citing *United States v. Contreras*, 820 F.3d 255, 263 (7th Cir. 2016)).

Here, the district court credited Rosenbery's familiarity with the area and Clay Street having driven down it regularly. The court also found credible the officer's account that the streetlights along the block were sufficient to illuminate his view and that he was close enough to notice Banks's taillights blinking. Based on this, the district court concluded that

Rosenbery's testimony was enough to establish reasonable suspicion for the traffic stop. We cannot say on this record that the district court's assessment of Rosenbery's testimony was clearly erroneous.

### 2. Prolonging the Stop

Banks also argues that the officers unnecessarily prolonged the traffic stop by questioning him, which allowed time for the drug-sniffing dog to arrive at the scene, thus rendering the resulting search unconstitutional. *See Rodriguez v. United States*, 575 U.S. 348, 350, 355 (2015). We review the district court's factual determination of whether law enforcement's questioning needlessly prolonged a traffic stop for clear error. *See United States v. Gholston*, 1 F.4th 492, 497 (7th Cir. 2021). A "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 355 (internal citation and marks omitted).

Inspecting a vehicle's registration and proof of insurance is a common inquiry that is incidental to a traffic stop. *Id.* But a dog sniff is typically not part of an officer's traffic mission because it lacks a "close connection to roadway safety." *Id.* at 356. If a dog sniff, among "certain unrelated checks," prolongs a stop, then it must be justified by independent reasonable suspicion. *Id.* at 355. At the same time, "[i]t is well-established a dog sniff of a vehicle's exterior only for illegal drugs *during* a lawful stop for a traffic violation does not infringe Fourth Amendment rights, even absent reasonable suspicion of drugs." *United States v. Lewis*, 920 F.3d 483, 491 (7th Cir. 2019).

While the sequence and timing of events is relevant, the number of minutes between the stop and the dog sniff is not dispositive in and of itself. *See United States v. Lopez*, 907 F.3d 472, 486 (7th Cir. 2018). The key question is "whether the defendant was detained longer than necessary" so that the dog sniff could take place. *Gholston*, 1 F.4th at 496.

Here, the district court concluded that, because the stop "was still a proper, ongoing investigation" at the time the dog alerted, the officers had not impermissibly prolonged the traffic stop beyond the time reasonably required to complete the related investigation. This conclusion was not clearly erroneous.

After Morey discovered that Banks's insurance card had expired, the officer asked Banks if he could provide updated insurance information. Banks then took it upon himself to get out of his car and call someone for the insurance information. He was still on the call when the dog sniff took place.

Banks's best argument is that, while he was on the phone, Ganley momentarily questioned him about his car. This, Banks posits, shows that the officers intentionally prolonged the stop to stall for the dog to arrive. The problem is that Banks did not proffer any evidence at the suppression hearing to support this theory. Rather, this evidence first came to light at trial when Ganley testified.

Nevertheless, Banks insists that his motion for a new trial gave the district court the opportunity to consider and act on these facts. But Banks should have raised this argument in the context of his motion to suppress, not after the trial. *See* Fed. R. Crim. P. 12(c)(3) ("If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.").

What is more, his motion for a new trial made no mention of Ganley, arguing only that "[t]he Court admitted it had doubts about the Defendant's traffic violation, yet denied the Motion to Suppress anyway." And, later, at the sentencing hearing when the court announced its ruling on the motion for a new trial, Banks simply reiterated his concern about Rosenbery's credibility.

Simply put, Banks's suppression motion failed to mention Ganley's role in purportedly prolonging the stop, and Banks otherwise failed to argue that Ganley's questioning was a basis for suppressing evidence of the handgun. *See United States v. Kirkland*, 567 F.3d 316, 321 (7th Cir. 2009) ("Not only must the defendant move to suppress evidence to preserve an issue for appeal, but he also must identify the grounds upon which he believes suppression is warranted."); *United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007) ("[T]here is no good cause to excuse a Rule 12 forfeiture where a defendant files a timely motion to suppress on one ground, and later seeks to assert a new ground for suppression for the first time on appeal."). Accordingly, Banks has forfeited the issue and has failed to establish that the district court's denial of the suppression motion constituted plain error. *See United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (*en banc*) (stating the requirements of plain error being an error that is plain, affects substantial rights, and had a serious effect on the fairness, integrity, or public reputation of judicial proceedings).

But putting forfeiture aside, Banks's argument is unpersuasive in any event. When Ganley briefly questioned him, Banks was still on the phone trying to obtain his new insurance information. There is nothing in the record to indicate

that Ganley's momentary exchange with Banks inhibited or delayed these efforts in any way.

### 3. Probable Cause

Next, Banks contends that the district court erred by concluding that law enforcement had probable cause to search the car based on the drug-sniffing dog's alert. "A dog's alert on a car can give probable cause to search the entire car." *United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019). When "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime," "[a] sniff is up to snuff." *Florida v. Harris*, 568 U.S. 237, 248 (2013).

In Banks's view, the dog's alert fails to establish probable cause because it was a false positive: no drugs were found after a thorough search of Banks's car. He argues the false alert sheds doubt on the dog's training, its detection skills, or the handler's interpretation of its alert—any of which could defeat probable cause, invalidate the search, and exclude the gun as evidence. But "we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Id.* at 249. As we have said elsewhere, "the mere absence of drugs in [a defendant's] car does not undermine the probable cause to search it for drugs, provided there was probable cause in the first place." *Simon*, 937 F.3d at 834.

During the suppression hearing, the government presented alternative explanations as to why an alert may not have resulted in the discovery of drugs. For example, the prosecutor posited, Banks or someone around him could have smoked marijuana in the car at an earlier time leaving an

odor. Alternatively, drugs could have been present in the car but so successfully hidden that law enforcement was unable to find them. Banks offered nothing in rebuttal. Nor did he present any evidence to call into question the dog's training, its detection skills, or the handler's interpretation of the alert. In short, Banks did nothing to undermine the presumption that, when a certified police drug-sniffing dog indicates the presence of drugs, probable cause is present. *See Harris*, 568 U.S. at 246–47 ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search."). Accordingly, on this record, Banks has not shown that the district court's finding of probable cause was clearly erroneous.

For these reasons, Banks's challenge to the district court's denial of his efforts to suppress evidence of the handgun is unpersuasive.

## B. Sufficiency of Evidence

Finally, Banks appeals the district court's denial of his motion for judgment of acquittal and motion for a new trial, arguing that the trial evidence was insufficient to show that he had knowingly possessed the handgun as § 922(g)(1) and § 924(a)(2) require. 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Here, Banks moved for acquittal at the close of the government's case pursuant to Rule 29 but rested without renewing the motion. As we stated recently in *United States v. Carpenter*, under such circumstances we review a defendant's sufficiency-of-evidence challenge *de novo.* 162 F.4th 876, 881 (7th Cir. 2025). In doing so, we "view the evidence in the light most favorable to the prosecution and ask whether any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moshiri*, 858 F.3d 1077, 1081 (7th Cir. 2017) (citation modified). "We do not reweigh the evidence nor judge the credibility of witnesses. If there is a reasonable basis in the record for the verdict, it must stand." *Id.* at 1082 (citation modified); *see United States v. Wright*, 85 F.4th 851, 860 (7th Cir. 2023) (characterizing this standard as "nearly insurmountable").

At trial, the government presented circumstantial evidence that Banks constructively possessed the gun found in his car. Under a constructive possession theory, "an individual is deemed to 'possess' contraband items even when he does not actually have immediate, physical control of the objects." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009) (citation modified). To establish constructive possession, the government may demonstrate a defendant's nexus to the gun by showing that the defendant either had exclusive control over the property where the gun was found or a substantial connection to the location where the gun was found. *See United States v. Davis*, 896 F.3d 784, 790–91 (7th Cir. 2018). Although mere proximity alone is insufficient to establish this nexus, proximity together with direct or circumstantial evidence of some factor indicating a connection with the contraband, even including evasive conduct, "is enough to sustain a guilty verdict." *Id.* at 790.

Here, there was sufficient evidence from which a reasonable jury could find that Banks constructively possessed the gun. First, the gun was found hidden in his car where he kept his cell phones and his personal documents, including a W-2 form and a written warning from Illinois State Police. Second, Banks was listed on the car's registration, along with one

other person. Third, Banks provided the arresting officers with the name of a woman who had used his car that day, but the woman later testified that she did not know Banks and could not recognize him. Furthermore, prior to the arrest, Banks told Ganley that the car and the items inside the car belonged to him alone, even though, after his arrest, Banks claimed that he sometimes loaned out the car to others. Finally, during recorded phone calls from jail, Banks told others that law enforcement "went straight to where the lick was" and speculated that he was pulled over because some acquaintances were "tellin' they ass off around here."

Viewing the trial evidence in a light favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Banks knowingly possessed the gun found in his car. Accordingly, the district court correctly rejected Banks's argument that the trial evidence was insufficient to support his conviction.

*     *     *

For the foregoing reasons, the judgment is AFFIRMED.